**In re Robert A. VALENTINE and Lorraine Valentine, Debtors.**

**Bankruptcy No. 90–30519–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

July 5, 1991.

---

Bruce E. Arkema, Rilee Cantor & Russell, Richmond, Va., for claimant.

Frederick W. Gibb, Spinella, Owings & Shaia, Richmond, Va., for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

In this chapter 13 case, the court must resolve a conflict between competing claimants to payment under a promissory note secured by a deed of trust on realty of the debtors. Robert L. Gilliam, III, and John A. Chandler each filed secured claims to payment of the note, and each has objected to the other's claim. A hearing was held on the objections on April 24, 1991.

After considering the arguments of counsel and the evidence presented at the hearing this court allows Chandler's secured claim and partially disallows Gilliam's secured claim.

### Facts

The debtors as makers executed a "Deed of Trust Note" dated December 8, 1987, wherein they promised to pay Westhampton Mortgage Company, Inc., or order, the sum of $54,000.00 plus interest at 19½ percent. The note provided for 59 consecutive monthly installments in the amount of $1,025.74, beginning on January 8, 1988,

and continuing until December 8, 1992, at which time the entire principal and accrued interest would become due and payable.

The note was made as part of a transaction in which Westhampton Mortgage loaned the principal amount to the debtors. The note was secured by a deed of trust on three parcels of property located in Mecklenburg County, Virginia. The funds were actually provided by Gilliam, and as part of his agreement with Westhampton Mortgage, the note was endorsed over to him with recourse by Sommerville Wickham, Jr., as president of Westhampton Mortgage.

The Valentines subsequently missed payments on the note. On November 21, 1989, Gilliam endorsed the note back to Westhampton Mortgage with the following language: "Without recourse, pay to the order of Westhampton Mortgage Co. Inc." At the hearing Gilliam testified that he endorsed the note back to Westhampton Mortgage at Wickham's request for the sole purpose of permitting Westhampton Mortgage to foreclose on the deed of trust. Gilliam was unable to explain why Wickham required the note to be endorsed back to Westhampton Mortgage for foreclosure.

After Westhampton Mortgage had received the note back from Gilliam, by an agreement dated December 11, 1989, Westhampton Mortgage assigned to Chandler 33 payments falling due under the note after that date including part of the note's balloon payment. In return for the stream of payments assigned to him Chandler paid Westhampton Mortgage $52,424.71. The note was not endorsed over to him by Westhampton Mortgage. Chandler made no notation of his interest on the face of the note, nor did he take possession of it. However, the assignment agreement was recorded in the clerk's office of Mecklenburg County Circuit Court on January 26, 1990.

A few days later, on January 29, 1990, Gilliam caused the note to be endorsed to him once again. The endorsement read:

January 29, 1990
With Recourse, Pay to the order of Robert L. Gilliam, III.

| | |
|---|---|
| Payment Guaranteed by Sommerville Wickham, Jr. | Westhampton Mortgage Co. Inc. by Sommerville Wickham, Jr. President |

---

Gilliam asserts that at the time of endorsement back to him he was unaware of the assignment to Chandler. He initiated a foreclosure sale on the property. The debtors halted the scheduled sale by filing this chapter 13 case on February 23, 1990.

The debtors' chapter 13 plan provided for both prepetition delinquency and payments accruing postpetition to be paid by the trustee to Chandler, until October 1992, at which time remaining payments under the deed of trust note were to be paid to Gilliam. Both Chandler and Gilliam filed secured proofs of claim asserting rights under the note. Both objected to each other's secured claim.

Sommerville Wickham, Jr., and Westhampton Mortgage are presently in chapter 7 bankruptcy cases in this court with little, if any, distribution expected to creditors such as Gilliam or Chandler.

### Positions of the Parties

Gilliam argues that under the Uniform Commercial Code (U.C.C.) as adopted in Virginia at Va.Code Ann. §§ 8.1–101 to 8.11–108 (1965 Added Vol. & Supp.1991), he is a holder in due course of a negotiable instrument and that as such he takes free of Chandler's claim to the stream of payments under the note. Even if he is not a holder in due course, argues Gilliam, he is still a holder of the instrument and therefore claims a superior right to Chandler.

Chandler makes the threshold argument that the U.C.C. does not apply to determine the rights between the parties. Further,

Chandler argues, even if the U.C.C. did apply, Gilliam could not be a holder in due course for three reasons: 1) because Gilliam did not take the note for value; 2) because he was put on notice of Chandler's assignment by virtue of its recordation on January 26, 1990, prior to transfer of the note back to Gilliam; and 3) because Gilliam was already on notice that the note was overdue. Not being a holder in due course, Chandler argues, Gilliam's interest in the note is subordinate to Chandler's.

### Discussion and Conclusions

Under 11 U.S.C. § 502(b)(1) this court may determine the amount of each claim pursuant to applicable law. Gilliam's claim is based upon his rights under the U.C.C. as adopted in Virginia; Chandler's claim relies on the general law of assignments in Virginia.

### WHETHER THE U.C.C. GOVERNS THE ANALYSIS.

The threshold issue is whether or not the U.C.C., and Title 8.3 (Article 3) in particular, applies to determine the rights between the claimants. Chandler's argument that the U.C.C. does not apply relies largely on an illustration located in Official Comment No. 4 to Va.Code Ann. § 8.9–102, a section that defines the scope of Title 8.9 (Article 9):

> The owner of Blackacre borrows $10,-000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the

mortgage of delivery or non-delivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest. See Section 9–104(j). But under Section 3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course.

Va.Code Ann. § 8.9–102 Official Comment 4 (Supp.1991).

 Chandler argues that the comment is unequivocal in requiring the application of other law to any questions concerning the mortgagee's interest in a note and that "other law" does not refer to other articles of the U.C.C. However, this argument is incorrect. The U.C.C. applies to rights flowing from the transfer of negotiable instruments, even if secured by real estate mortgages. *Capital Investors Co. v. Executors of the Estate of Morrison,* 484 F.2d 1157, 1160 (4th Cir.1973), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

In addition, the comment relied upon appears following a section that limits the scope of Article 9, not the entire U.C.C. The comment illustrates that *Article 9* does not apply to the creation of the mortgage and does apply when the mortgage holder creates a security interest in the note to a third party. The present case deals with neither of these situations but rather to the transfer of title to the note by negotiation. Article 3 may therefore apply. *Capital Investors,* 484 F.2d at 1160.

### HOLDER IN DUE COURSE.

 Having determined that Article 3 is not excluded from application here, we must next examine what rights the parties have with respect to the note. Gilliam is a holder because he is a person in possession of an instrument [1] endorsed to his order. *See* Va.Code Ann. § 8.1–201(20) (1965 Added Vol. & Supp.1991).

Section 8.3–302(1) provides that a holder in due course is a holder who takes the

---

**1.** Neither party raised the issue of whether the note is a negotiable instrument. Nevertheless, after examining the note admitted to evidence this court concludes that it satisfies the requirements of Va.Code Ann. § 8.3–104 (1965 Added Vol.).

instrument for value, in good faith,[2] and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. Va.Code Ann. § 8.3–302(1). Gilliam originally took the note for value and without notice of any claims or defenses. However, he negotiated the instrument back to Westhampton Mortgage with an unrestricted endorsement.

### A. Value

■ Chandler challenges whether Gilliam gave value on receipt of the note the second time. Although Chandler argued that the second negotiation to Gilliam was taken as part of an executory contract that eventually failed, raising the question of whether value was given,[3] the evidence he presented was insufficient. In any event, the antecedent debt owed by Westhampton Mortgage to Gilliam was sufficient to constitute value. *See* Va.Code Ann. § 8.3–303.

### B. Notice

■ Unfortunately for Gilliam, he does not satisfy the notice requirement. Section 8.3–304(3) provides:

> The purchaser has notice that an instrument is overdue if he has reason to know that any part of the principal amount is overdue....

Va.Code Ann. § 8.3–304(3).

By his own admission, Gilliam was aware at the time the note was negotiated back to him that the note was overdue. However Gilliam asserts that the relevant time to determine whether he had notice was the time of the original transfer. He argues that because his transfer back to Westhampton Mortgage was for the sole purpose of foreclosure, whether he had notice at the time of transfer back to him is irrelevant.

The court must reject this argument. Gilliam's transfer of the note back to Westhampton Mortgage was by special and unrestricted endorsement and as a result Westhampton Mortgage became the holder of the note. *See* Va.Code §§ 8.1–201(20), 8.3–202, 204(1), and 205. Gilliam could not have been a holder in due course during the interim period because he was not a holder. *United States v. Kellerman*, 729 F.2d 281, 284 (4th Cir.1984). Gilliam cites no authority as to how his prior status as holder in due course could be revived upon subsequent endorsement and transfer of the note to back to him. Indeed, it was his own conduct in negotiating the note back to Westhampton Mortgage without noting any restriction that provided Wickham with the opportunity to transfer an interest in the note to Chandler.

Therefore, on transfer back to him Gilliam received only such rights as the transferor had in the note. Va.Code § 8.3–201(1). Since the transferror Westhampton Mortgage did not enjoy the rights of a holder in due course, then as transferee Gilliam must himself satisfy the requirements of § 8.3–302(1). This Gilliam cannot do because he had actual notice at the time of the transfer that the payments on the note were overdue and in default.[4]

---

**2.** Since Chandler has not raised the issue of Gilliam's good faith it will not be addressed here.

**3.** Pursuant to § 8.3–303(a), an instrument may be taken for value "to the extent that the agreed consideration has been performed...." Va. Code Ann. § 8.3–303(a).

**4.** Chandler also argued that Gilliam had notice by virtue of the recordation of his assignment interest. Chandler cites Va.Code § 55–66.1, which provides in pertinent part:

**Protection of assignees, transferees or indorsees of debts secured on real estate.**—Whenever any debt secured on real estate or personal property by mortgage, deed of trust or vendor's lien has been assigned, transferred or endorsed to another, in whole or in part, by the original payee thereof, such payee, assignee, transferee or endorsee may cause a memorandum or statement of the assignment to such assignee, transferee or endorsee to be entered on the margin of the page in the book where such encumbrance securing the same is recorded, which memorandum or statement shall be signed by the assignor, transferrer or endorser, his duly authorized agent or attorney, and when so assigned and the signature thereto attested by the clerk in whose office such encumbrance is recorded the same shall operate as a notice of such assignment and transfer....
Va.Code Ann. § 55–66.1 (1986 Repl.Vol.).

## GILLIAM'S RIGHTS AS A HOLDER.

Even though he is not a holder in due course, Gilliam argues that he is entitled to recover on the note because he is a holder and Chandler is not. It is true that a holder may enforce payment of the note in his own name. Va.Code Ann. § 8.3–301. However, as a holder not in due course Gilliam "takes the instrument subject to all valid claims to it on the part of any person." Va.Code Ann. § 8.3–306. Official Comment 2 clarifies this statutory language to include "not only claims of legal title, but all liens, equities, or other claims of right against the instrument or its proceeds." Va.Code Ann. § 8.3–306 Official Comment 2.

### Conclusion

Since Gilliam cannot be a holder in due course he is subject to Chandler's assignment. Therefore, Chandler's claim will be allowed, and Gilliam's claim will be disallowed to the extent of Chandler's right to payments under his assignment.

The court entered separate orders on July 5, 1991, reflecting this ruling.

---

This language appears to conflict with § 8.3–304(5) which provides:

> The filing or recording of a document does not of itself constitute notice within the provisions of this title to a person who would otherwise be a holder in due course.

Va.Code Ann. § 8.3–304(5).

Because the court rules that Gilliam had notice that the note was overdue and thus would not "otherwise be a holder in due course," the issue raised by the apparent conflict in the statutes need not be resolved today.